We appreciate it very much. We'll move to our second argument at the end of the day. This is Appeal No. 23-2880, Rodney Lass v. Jason Wells. Mr. Jensen, good morning. Just hold on one second. Okay, go ahead. Good morning. Attorney Jeffrey Jensen appears on behalf of the petitioner-appellant Rodney Lass. This case, which has been working its way through the court system for almost a decade, involves the relationship between Mr. Lass and a woman that we will refer to by the pseudonym Caroline. The case has a long and tortured history that I feel compelled to discuss because Mr. Lass has what I think are three very substantial issues, all of which were decided largely on procedural basis by the state court and also by the district court. It began with Mr. Lass being charged with two counts of misdemeanor battery and one count of disorderly conduct involving Caroline. That case went to trial, and in the middle of trial, Caroline made some statements during her testimony that prompted a motion for a mistrial, which was granted. And the case ended with Mr. Lass being convicted of multiple serious felonies in which he was sentenced to what is in effect a life in prison sentence. He would not be released to supervision until November 10th of 2056, and he's in his 50s now, and his case would not be discharged until 8-17-19-2081. So the stakes couldn't be higher for Mr. Lass. Mr. Lass and I are both well aware that we have a long and steep hill to climb here today before the court because this is not merely an error-correcting court. We have to demonstrate that there was some serious or extreme malfunction of the state court and, to a certain extent, the district court. Mr. Jensen, can I clarify one thing, please, on your vindictive prosecution claim? Sure. Are you challenging the Court of Appeals determination with respect to the presumption, or are you solely focusing on actual vindictiveness? Because at one point in your brief, you note that it's not entirely settled concerning the presumption of vindictiveness following a mistrial, which doesn't sound like habeas land to me. Yes. So I just want to confirm that, please. Sure. I was attempting to display candor toward the tribunal when I said I'm not aware of any case that specifically says in federal law that filing additional charges after a mistrial can be vindictive prosecution that gives rise to the presumption. In my reply brief, I did cite U.S. v. Jameson, which is a D.C. circuit case in which the court did say, and I don't think it is on all four points, but it does address the concept that you asked me about, that there shouldn't really be a difference between additional charges filed after a reversal. But from a Supreme Court standpoint, are you accepting that there is not clearly established precedent from the Supreme Court on the presumption question? I'm conceding, and I've looked hard. So that's what I thought. So the focus of your vindictive prosecution claim is on actual. Yes. Not on the presumption. All right. Thank you for that clarification. Can I pile on here? Sure. Okay. I, too, was focused on this question, and then I realized, maybe mistakenly, it doesn't matter. And the reason I wonder whether it matters, or I didn't think it matters, is because unless I have misread footnote 5 of the Wisconsin Court of Appeals decision. Do you have that there, Mr. Jameson? I don't want to take your time. Okay. It's on page 7 of the decision. The end of footnote 5, they seem to have resolved the dispute before them by assuming a presumption applied, a presumption of vindictiveness. We assume without deciding that the presumption could apply. Yes, I see that. You see that? So it seems to me that we, you know, I don't, you certainly wouldn't be asking us to set that assumption aside. I certainly would not. No, and I don't see anything in your adversary's brief. So it seems like we can just take it on the assumption and then analyze it within that framework, unless I'm mistaken. You are not mistaken. And my argument, I have to, as Judge St. Eve asked me, I think out of candor to the tribunal, I had to admit there isn't a Supreme Court case that I could find. However, there are a lot of other cases that seem to suggest that there's no reason a presumption shouldn't arise. Yeah, okay. I got it. Okay. But also, more importantly, there is actual vindictiveness that is the issue of actual vindictiveness. Okay, on this particular point, because I think this is the next logical step, on the vindictive prosecution claim and focusing on it and it alone for the moment, is your challenge on appeal to the failure in the district court to hold an evidentiary hearing, or is your challenge something more? Well, I believe, and I believed when I was writing that brief, that the record was not complete without an evidentiary hearing to establish actual prejudice. You're clear on that. You're very clear on that. Okay. Did that answer the question? Okay. But are you – I tended to read your brief, but you need to tell me that what you were saying here is, look, you, the Seventh Circuit, should send this case back for an evidentiary hearing to allow the facts to get developed for Mr. Lass around the vindictive prosecution claim. Correct. Or is that just an alternative request? That's the question. It's an alternative request because, again, out of candor to the court, I don't think the record is complete without having an evidentiary hearing. I do completely disagree with the Wisconsin Court of Appeals that even assuming the allegations to be true, there's no actual vindictiveness because, first of all, the prosecutor, Ms. Williams, was not placed under oath. She was not subject to cross-examination. The judge just asked her one day in court. So is that an issue on the hearing, or is that an issue on seeking habeas relief based on not applying clearly established Supreme Court precedent? The reason I made that comment is because I think it demonstrates that the record is not complete to deny Mr. Lass's vindictive prosecution claim without conducting a hearing. I mean, we've all heard and read the famous quote that the engine of truth is cross-examination, and I don't think it's appropriate just to take Ms. Williams' explanation to the judge as the gospel truth, especially when Lass's attorney at the time, Mr. Haney, filed an affidavit in which he alleges that Ms. Williams said to him, not only if a mistrial motion is granted, I will recharge him with all of these felonies. She said, I'm leaving the DA's office and I will come back and prosecute him for free, which I think demonstrates a personal animus toward Rodney Lass. The Wisconsin court considered that and rejected it. What do we make of that at the habeas stage? Well, what I think you ought to make of it, I'm not sure what you do actually make of it. Under the law, what should we make of it? What I think you ought to make of it is that that was not a fair and complete fact-finding procedure used by the circuit court and the Wisconsin court of appeals because you can't make a finding of fact based on an explanation given by a prosecutor and an affidavit filed by a defense lawyer. Okay, so let me, in keeping with that question, is the argument on appeal, it's not made this expressly in the brief, okay? I'm just trying to get it fleshed out a little bit here. Because of what you just said in your colloquy with Judge Sainee, is your argument then that the denial of federal habeas relief, the denial of the 2254 application, was grounded in an unreasonable determination of fact? Yes. 2254 D-2, not D-1. That's correct, yes. Is that the argument? Yes. I didn't see that in your brief. Okay, and then, yeah, so then that's the next step, is that that's me asking the question, it's not me writing the brief. You wrote the, you submitted the brief. If I could just add that, because it seemed to me what you were arguing was initially that your client is entitled to habeas relief because based on these facts, as we know them, under clearly established Supreme Court law, there was a vindictive prosecution here. And alternatively, you should be entitled to develop these facts further. That's how I understood your argument. But please, if it's something else, and in response to Judge Scudder's question, it sounds like you're saying there is something different. It's always dangerous in oral argument to try to remember exactly what you said in motions. But I do know that it was our intention in the petition, we asked the district court to conduct an evidentiary hearing. No question about that. If I didn't raise that issue in my appellate brief, then I guess that's my fault. But that is what our intention is, that the case should be remanded further. I mean, I sure thought in substance, and we're going to hear in a minute from Mr. DeSantis, so he can tell me I'm completely mistaken on this. I sure thought in substance what you were arguing was not so much that there's been a decision contrary to or reflecting an unreasonable application of Supreme Court precedent, but rather that the denial of post-conviction relief by the Wisconsin Court of Appeals rooted itself, grounded itself in such an incomplete view of the facts, so as to amount to an unreasonable determination of fact within the meaning of D-2. That's what I thought you, in substance, were arguing. That is the substance of what I was arguing. Because the case is much harder for me to conceptualize as a D-1 case because of what Judge Pryor asked you. Right. You can't really point to U.S. Supreme Court case law, and you're candid about that. I looked hard. I just could not find it. I'm sure you did. I'm sure. But my intention, or my point I have been trying to make for several years now, is that Mr. Lass is entitled to an evidentiary hearing into whether there was prosecutive vindictiveness following the mistrial. Yeah. And when I get to zero, does that include my two minutes for rebuttal, or should I stop? Well, look, I'm not—I mean, I'll tell you. I think you submitted a good brief, and this is a serious issue, so I'm not worried about the clock. Thank you. Okay? I got one more. Can I ask you another question? Of course. Okay. Judge St. Eve was asking you about the state court's consideration of this set—everything we're talking about. And it does seem to me, unfortunately for Mr. Lass, that the Wisconsin Circuit Court in Milwaukee County— Mr. Williams's explanation for the felony charge, but then importantly, after considering that, made the following statement. The court, meaning the trial-level court, was fully aware of Attorney Haney's affidavit and the state's position, and thus it was not air to forego a formal evidentiary hearing for the purposes of swearing both attorneys in. The only thing—this is my question—the only thing that the reference to Attorney Robert Haney's affidavit can mean, in my view, is the statement you made two or three minutes ago, that if I have to, I'm going to come back and on a pro bono basis prosecute Mr. Lass, because I don't know what else it could refer to. Well, there were two primary statements in Haney's affidavit. One was that Williams threatened to file the more serious felony charges if another motion for mistrial was made. And then he also alleged in his affidavit that she said, I'm leaving the DA's office and I will come back and personally prosecute— Right, so why doesn't that mean that what we have here in front of us is effectively a factual finding by the Wisconsin courts that ADA Jennifer Williams's statements were credible, and they were credible considering, or against the backdrop, at least the trial court determined, of the statements that Mr. Haney submitted in his affidavit? Well, I think the trial court intended that to be a finding of fact to make Mr. Lass's ability to appeal difficult, but my argument is it's an unreasonable finding of fact because there was no hearing help. And that circles us back to where we were, right? Right. All right, I got it. So you don't dispute, then, that the Wisconsin courts specifically considered these statements in the affidavit in denying post-conviction relief? That's what the judge said, so I have no way to dispute it. Okay, let's do this, Mr. Jensen. I'm going to give you a few minutes on rebuttal. Okay? So don't worry about that. We very much appreciate your candor here. Let's hear from Mr. DeSantis, and then we'll come back to you. Good morning. May it please the Court? Attorney Nick DeSantis representing the respondent. The Wisconsin Court of Appeals held that the facts alleged by Rodney Lass, including his former counsel's affidavit, if true, would not prove vindictive prosecution. This was not an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Was it an unreasonable factual determination? No, it was not. So the D-2 prong as opposed to the D-1? It was not an unreasonable factual determination for a couple of reasons. Before you answer that question, can you just answer one predicate? Sure. Is the D-2 issue before us in your view? We've explained why D-2 may be in play. Do you know what we mean by D-2? You know what I mean by D-2? Yes, the unreasonable factual determination. Right. And so the question is, the case is not briefed or presented to us as both a D-1 and a D-2 case. It's presented more as a D-1 case with an accompanying request for an evidentiary hearing. Yes. And so is there any barrier to us considering D-2? Waiver, forfeiture, default, call it what you want. I did not understand the D-2 issue to be before this court, but I'm happy to answer questions about it. But I think more pointed he's asking the question, though, is we, of course, pose questions regarding D-2. Is it properly before us? The reason I ask the question, Mr. DeSantis, is because as I read Mr. Jensen's brief, I thought I'd say you're wrong. Wouldn't be the first time that I thought what he was making was a D-2 argument, but without an accompanying citation to D-2. In other words, you see what I mean? I thought that what he was saying is that the denial of state post-conviction relief rooted itself in an unreasonable determination of fact. Why? Because as he just articulated this morning, it did not fully consider the statement that ADA Jennifer Williams was alleged to have made. And it's alleged to have reflected, you know, an animus, to have been vindictive. Well, I believe the court not only fully considered that statement that Mr. Haney made, but the court accepted that statement as true. What court are we talking about? The Wisconsin court. Well, the circuit court as well, but the Wisconsin Court of Appeals. Because at this stage in the proceedings, what the court was doing is looking at Mr. Lass's factual allegations and deciding, assuming all these factual allegations are true and applying Goodwin, would this entitle the defendant for relief on vindictive prosecution? Or is there some innocent explanation for the charge increase that's compatible with the facts Mr. Lass alleged? And the court applied Goodwin and concluded there is an innocent explanation that's compatible with the facts Mr. Lass alleged, so he was not entitled to a hearing. And I think the court said even accepting everything is true, including what it had previously referenced about the statements that I would come back and prosecute it even if I was pro bono. That's right. And this is not a situation where the prosecutor was sort of contradicting Mr. Lass's factual allegations. The prosecutor's explanation is fully consistent with the facts that Mr. Lass alleged. And so the court concluded that shows that Lass did not allege facts that proves his vindictive prosecution. Okay, but what I think you've got to grapple with, okay, is Mr. Jensen's point that the pro bono statement, you know what I'm talking about? Yes. Okay. That the pro bono statement is what pushed things over the top. Because the pro bono statement is tantamount to the prosecutor saying I'm going to kind of make it my mission in life, including after I leave the office to come back and prosecute you pro bono. By the way, I've never even heard of such a thing. I don't think there's pro bono prosecutors. Maybe there are, but I've never heard of that. So what he's saying is that that shows a level of personal animus. It's suggestive of vindictiveness, and the courts really haven't grappled with that. That's why he wants an evidentiary hearing. What's your response to that? The court did explain that it considered that statement. What court? You've got to be specific as to what court. Well, the circuit court as well as the court of appeals. What are we reviewing? Which court are we reviewing? The court of appeals. Okay, so tell me where the court of appeals considered that. Because, I mean, this is an important point. So I want to address, I don't think that statement shows vindictiveness in the way that Mr. Last needs to prove vindictiveness. Let's start first with when you said the court considered it. I'm looking at the Wisconsin court of appeals decision. Where did it consider it? I don't have the... Are you by chance referring to paragraph 23 in the interest of time? I'll nominate paragraph 15 too. 15. Maybe 15. Maybe 23. But I think it's got to be one of the two. There's no... Let me tell you, I don't think there's a specific reference to the pro bono comment in consideration of it. What I do think is that 15 and 23 in combination, if this is what you're intending to say, could be read to evidence that the Wisconsin court of appeals is aware of the fact that the circuit court made a credibility determination on this. Yes. And it shows that the court of appeals considered Mr. Haney's affidavit, which was not wrong. But, again, I don't believe that that commitment to personally prosecute comment does show vindictiveness in the way that... How do you respond to Mr... What does it not show then? I'm sorry. So in order to succeed on his actual vindictiveness claim, Mr. Last would have to prove that the reason for the charge increase was improper. He would have to show... But the prosecutor said, I will return under the district attorney's pro bono program to personally see to the prosecution of Mr. Last. Right. That would show that the prosecutor feels strongly about the case, but I don't think it shows that the charge increase was for improper reasons. But how is it not personal animus, though, toward Mr. Last? It wasn't, I'm passionate about these types of cases. Well, again, animus would mean that the reason for increasing the charges was improper. So he would have to show that the prosecutor increased the charges to get back at him for moving for a mistrial, not to impose legitimate punishment commensurate with his conduct. That's the vindictive prosecution claim. Now, this claim, while it shows that the prosecutor did feel strongly about the case, I don't think it provides any suggestion that the prosecutor was increasing the charges to get back at him for the mistrial motion, as opposed to because she learned about the full extent of his conduct. And in paragraph 26 of the Wisconsin Court of Appeals agrees with your assessment that the problem here is that the trial court, what he called it, subjective threat. The subjective threat reaction is an unexplained leap from the allegations in the affidavit. Yes. How do you respond to Mr. Jensen's argument that that determination could not have been made without a hearing where you can assess the credibility of both the prosecutor and I guess it would be just the prosecutor? Well, I think the prosecutor's explanation can be considered. Why can it be considered without a credibility determination? Well, there was a credibility determination. The court credited that explanation. And I think this court approved of a relatively – So how – let me just take it and be crystal clear. Mr. Jensen is saying you can't make that credibility determination without putting the prosecutor under oath and asking her those questions. How do you respond to that argument? Well, I respond – this court approved of a fairly similar procedure in United States v. Falcon. In that case, a defendant argued vindictive prosecution because a charge was added after he moved to sanction the prosecutor. The government responded by explaining the reasons for the charge, and this court held that the trial court did not clearly err in crediting the government's explanation and denying the motion without an evidentiary hearing. Look at footnote 6. Footnote 6, the Court of Appeals opinion. So were those comments considered? Yes, I believe they were. But again, the comments – they show that the prosecutor felt strongly about the case, but they don't show that the increase in charges was for the forbidden reason to punish him for moving for a mistrial, as opposed to having learned the full extent of his conduct and wanting to impose appropriate punishment for that conduct. You've got some time left. Any further points you want to make? Unless there are other questions from this court, I'll yield the rest of my time. Okay. Thank you, Mr. DeSantis. Mr. Jensen, why don't we – you asked for – I'm going to give you three minutes of rebuttal because I think we used most of your time trying to work through this. I don't think I'm going to need three minutes to rebut the State – the Respondent's argument because counsel was being asked pointed questions by the court about why doesn't that show that the prosecutor was displaying personal animus, and he argued that, well, there could be other reasons, that she's just personally passionate about the kind of work she does and things of that nature. But answering the question that way muddles the difference between allegations of fact and proving things after an evidentiary hearing. After Ms. – the allegation that Ms. Williams said that certainly is enough to raise the specter of whether she had a personal animus, and I think that should be explored in detail in an evidentiary hearing subject to cross-examination. I don't think the Circuit Court in Milwaukee County or the Wisconsin Court of Appeals or the Federal District Court, for that matter, can make findings of fact based on what Ms. Williams said to the court and what he and he said in his affidavit. I believe we have an evidentiary hearing, and that's all I have. Thank you. Okay. Mr. Jensen, thanks to you. Again, Mr. DeSantis, thanks to you. We'll take the appeal under advisement.